**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

ROBIN PFAHNING, on behalf of herself
and all others similarly situated,

     Plaintiff,

     v.

CAPITAL ONE BANK (USA), N.A.,

     Defendant.

Civil Case No. 1:19-cv-00950-LO-TCB

**MEMORANDUM IN SUPPORT OF
DEFENDANT CAPITAL ONE BANK'S MOTION TO DISMISS,
OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

Jessica Merry Samuels (VA Bar No. 89537)
Andrew Soukup (admitted *pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, D.C. 20001
Tel.: (202) 662-6000
Fax: (202) 778-5240
asoukup@cov.com
jsamuels@cov.com

*Attorneys for Defendant
Capital One Bank (USA), N.A.*

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

      A.     Regulation Z's Payment Allocation Rules and Capital One's Customer
            Agreement. ...................................................................................................... 2

      B.     Pfahning's Cash Advance Balance Remains Unpaid Through August 7,
            2018 ................................................................................................................. 3

      C.     Pfahning's Lawsuit. ....................................................................................... 6

PROCEDURAL STANDARD ............................................................................................. 6

ARGUMENT ....................................................................................................................... 7

I.       PFAHNING LACKS ARTICLE III STANDING TO SUE BECAUSE SHE DID
        NOT PAY HER CASH ADVANCE BALANCE IN FULL UNTIL AUGUST
        2018 .............................................................................................................................. 7

II.      ALTERNATIVELY, PFAHNING'S CLAIMS FAIL ON THE UNDISPUTED
        FACTS, MAKING SUMMARY JUDGMENT PROPER. ............................................... 12

CONCLUSION .................................................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Canoe Ass'n, Inc. v. E.P.A.*,
 30 F. Supp. 2d 908 (E.D. Va. 1998) ......................................................10

*Atkins v. Burwell*,
 2016 WL 4399304 (D. Md. Aug. 17, 2016) .............................................12

*Beck v. McDonald*,
 848 F.3d 262 (4th Cir. 2017) ................................................................7

*Blum v. Yaretsky*,
 457 U.S. 991 (1982) ............................................................................10

*Briley v. United States*,
 2016 WL 5402216 (E.D. Va. Sept. 26, 2016) ...........................................7

*Crutchfield v. U.S. Army Corps. of Engineers*,
 230 F. Supp. 2d 687 (E.D. Va. 2002) .....................................................11

*DaimlerChrysler Corp. v. Cuno*,
 547 U.S. 332 (2006) .............................................................................7

*Day v. Bond*,
 500 F.3d 1127 (10th Cir. 2007) ............................................................11

*Doe v. Cuomo*,
 755 F.3d 105 (2d Cir. 2014) .................................................................11

*Doe v. Obama*,
 631 F.3d 157 (4th Cir. 2011) ................................................................7

*Downing v. Lee*,
 2017 WL 3082664 (E.D. Va. July 18, 2017) ...........................................13

*Drakes Bay Oyster Co. v. Jewell*,
 747 F.3d 1073 (9th Cir. 2014) ..............................................................10

*Dress v. Capital One Bank (USA), N.A.*,
 2019 WL 3451304 (E.D. Va. July 30, 2019) .......................................6, 13

*Fernandez v. Hayden*,
 307 F. App'x 725 (4th Cir. 2009) ..........................................................13

*Foster v. Essex Property Inc.*,
  2017 WL 264390 (N.D. Cal. Jan. 20, 2017) ..........................................................................10

*Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*,
  204 F.3d 149 (4th Cir. 2000) ................................................................................................10

*Harik v. Nat'l Aeronautics & Space Admin.*,
  2006 WL 2381964 (E.D. Va. Aug. 16, 2006) ........................................................................12

*Hochendoner v. Genzyme Corp.*,
  823 F.3d 724 (1st Cir. 2016) ................................................................................................10

*Humphreys v. Roche Biomedical Labs., Inc.*,
  990 F.2d 1078 (8th Cir. 1993) ..............................................................................................13

*Kerns v. United States*,
  585 F.3d 187 (4th Cir. 2009) ..........................................................................................11, 12

*Kiser v. Kamdar*,
  831 F.3d 784 (6th Cir. 2016) ................................................................................................10

*Luther v. Wells Fargo Bank, N.A.*,
  2014 WL 6451667 (W.D. Va. Nov. 17, 2014) ............................................................13, 14, 15

*Maine Springs, LLC v. Nestlé Waters N. Am., Inc.*,
  2015 WL 1241571 (D. Me. Mar. 18, 2015) ...........................................................................11

*N.C. Fisheries Ass'n, Inc. v. Pritzker*,
  2015 WL 4488509 (E.D.N.C. July 22, 2015) ........................................................................10

*N. Carolina Indian Cultural Ctr., Inc. v. North Carolina*,
  2013 WL 4674884 (E.D.N.C. Aug. 30, 2013) ........................................................................11

*Pisano v. Strach*,
  743 F.3d 927 (4th Cir. 2014) ................................................................................................14

*Sandlands C & D LLC v. Cty. of Horry*,
  737 F.3d 45 (4th Cir. 2013) ..................................................................................................12

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ............................................................................................................7

*SRS Techs., Inc. v. U.S. Dep't of Def.*,
  112 F.3d 510, 1997 WL 225979 (4th Cir. 1997) ...................................................................10

*Swiggett v. PCS Phosphate Co.*,
  2012 WL 5349466 (E.D.N.C. Oct. 29, 2012) ........................................................................12

*Trana Discovery, Inc. v. S. Research Inst.*,
    915 F.3d 249 (4th Cir. 2019) ..................................................................12

*United States v. North Carolina*,
    180 F.3d 574 (4th Cir. 1999) ..................................................................12

*Virginia v. United States*,
    926 F. Supp. 537 (E.D. Va. 1995) ......................................................7, 11

**Regulations**

12 C.F.R. § 1026.10(a).............................................................................9

12 C.F.R. § 1026.53 ........................................................................1, 2, 8

12 C.F.R. § 1026.54. ................................................................................2

12 C.F.R. § 1026.53, Supp. I ...............................................................2, 9

12 C.F.R. § 1026.54, Supp. I. .................................................................2

**Other Authorities**

13A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 3531.4 ...............................10

## INTRODUCTION

Plaintiff Robin Pfahning filed this class-action lawsuit seeking to recover about $44 in interest charges assessed in May, June, and July 2018 based on the mistaken premise that Capital One "charg[es] interest on credit card accounts for cash advances even after those cash advances are paid back in full." Compl. ¶ 1.  Capital One's records disprove this assertion.  Contrary to Pfahning's allegations, her cash advance balance was not paid in full until August 7, 2018, after the interest charges at issue were assessed.  Because Pfahning was never charged interest in the circumstances that she claims are unlawful, her claims fail.

In applying Pfahning's payments, Capital One followed the methodology set forth in Regulation Z and its Customer Agreement.  The annual percentage rate, or APR, on the purchase segment of Pfahning's account was higher than the APR for the cash advance segment of her account.  Both Regulation Z and Pfahning's Customer Agreement therefore required Capital One to apply most of Pfahning's payments to her higher-APR purchase balance, not to her lower-APR cash advance balance.  *See* 12 C.F.R. § 1026.53(a); Compl. Ex. A at 7.  As a result, a cash advance balance remained on Pfahning's account until August 7, 2018.  After that point, Pfahning was not charged interest in future billing cycles.

The fact that Pfahning had an outstanding cash advance balance through August 7, 2018 defeats her claims that Capital One improperly charged her interest from May to July 2018 "on cash advance amounts that were paid back in full." Compl. ¶ 9.  Rather, as Pfahning admits in her Complaint, the interest charges at issue must be lawful because Capital One may "charge interest on outstanding balances." *Id.* ¶ 40.  The Complaint should therefore be dismissed on Article III standing grounds because Pfahning has not been harmed by the alleged practice she seeks to challenge.  Alternatively, summary judgment should be granted in Capital One's favor

because Capital One's records indisputably prove that Pfahning's cash advance balance was not paid in full when the relevant interest was charged.

## BACKGROUND

### A. Regulation Z's Payment Allocation Rules and Capital One's Customer Agreement.

Regulation Z of the Truth in Lending Act sets forth in extensive detail how banks must apply credit card payments. *See* 12 C.F.R. § 1026.53. Under that regulation, a bank has discretion to determine how to apply payments received up to the amount of a minimum payment. *See* 12 C.F.R. § 1026.53(a), Supp. I cmt. 1. For amounts received in excess of the minimum payment, Regulation Z requires the bank to allocate those payments "first to the balance with the highest annual percentage rate," and then "any remaining portion" of the payment is allocated "to the other balances in descending order based on the applicable annual percentage rate." 12 C.F.R. § 1026.53(a). To determine what the APRs and balances are for purposes of applying payments, Regulation Z authorizes banks "to allocate an amount paid by the consumer in excess of the minimum periodic payment based on the annual percentage rates and balances . . . on the day the payment is credited to the account." 12 C.F.R. § 1026.53(a), Supp. I cmt. 2. Regulation Z makes clear that its payment allocation rules must be followed even if those rules might result in the accrual of interest charges that would otherwise not occur under a different allocation methodology. *E.g.*, 12 C.F.R. § 1026.54(a), Supp. I. cmt. 3 ("Card issuers must comply with the payment allocation requirements in § 1026.53 even if doing so will result in the loss of a grace period.").

Pfahning's agreement with Capital One tracks these requirements. As Pfahning's Customer Agreement explains:

> If your Account has Segment balances with different APRs, here is how we apply payments in a Billing Cycle:

> (1) We generally apply credits and payments up to your minimum payment first to the balance with the lowest APR, and then to balances with higher APRs.
>
> (2) We apply any part of your payment exceeding your minimum payment to the balance with the highest APR, and then to balances with lower APRs.

Compl. Ex. A at 7.  The disclosures on the back of Pfahning's monthly billing statements likewise state:

> We generally apply payments up to your Minimum Payment first to the balance with the lowest APR (including 0% APR), and then to balances with higher APRs. We apply any part of your payment exceeding your Minimum Payment to the balance with the highest APR, and then to balances with lower APRs.

Compl. Ex. B at 5.

### B.    Pfahning's Cash Advance Balance Remains Unpaid Through August 7, 2018.

Pfahning has held a Capital One credit card account for many years.  Compl. ¶ 21. Pfahning's Customer Agreement with Capital One provides that interest on her cash advance balance "begin[s] to accrue from the day a transaction occurs."  Compl. Ex. A at 6.  Her monthly billing statements further explained that "For Cash Advances . . . we will start charging Interest on the transaction date," and that "Interest Charges accrue on every unpaid amount until it is paid in full."  Compl. Ex. B at 5.  Even Pfahning admits that "reasonable consumers understand" that they "will be charged interest" on cash advances "from the date of the transaction until the date that the cash is paid back."  Compl. ¶ 3.

Pfahning's Capital One credit card was frequently used to obtain cash advances.[1]  By the end of Pfahning's April 2018 billing cycle, her monthly billing statement reflected that she owed

---

[1]     As explained below, *see infra* at 11-12, this Court may consider Capital One's account records in connection with Capital One's factual challenge to this Court's subject-matter jurisdiction.

a total balance $2,215.43.  *See* Declaration of Kristen Chapman, Dkt. No. 23 ("Chapman Decl.")

Ex. 1.  Of this balance, $2,164.43 was attributable to cash advances on Pfahning's account.[2]

Chapman Decl. ¶ 8.  The remaining $51 was attributable to the purchase balance of her account.

*Id.* ¶ 16.

During the next month's billing cycle, Pfahning made new purchases totaling $399.54.

*Id.* Ex. 2.  All of these purchases were made before May 24.  *Id.*  As a result of these purchases,

the total balance of Pfahning's account as of May 24 was $2,614.97:  $450.54 of which related to

the purchase balance of her account, and $2,164.43 of which related to the cash advance balance

of her account.  *See* Chapman Decl. ¶ 16.

On May 25, Pfahning made a $2,215.43 payment.  To apply this payment, Capital One

followed the payment allocation rules set forth in Regulation Z and Pfahning's Customer

Agreement, which require payments to be allocated according to APRs.  As shown on Pfahning's

monthly billing statement, the APR for the purchase balance of her account (19.40%) was higher

than the APR for the cash advance balance of her account (19.39%).  Chapman Decl. Ex. 2.

Capital One therefore applied Pfahning's May 25 payment as follows:

- $62, reflecting the amount of Pfahning's minimum payment, was first applied to Pfahning's lower-APR cash advance balance.

- The first $450.54 of Pfahning's payment in excess of her minimum payment was applied to her higher-APR purchase balance, which on May 25 consisted of the $51 purchase balance from the April 2018 billing cycle and the $399.54 in new purchases made between May 1 and 19.

- The remaining $1,702.89 was applied to Pfahning's lower-APR cash advance balance.

---

[2]     This balance was comprised of $1,404.21 in new cash advances and related fees made during the April 2018 billing cycle, an outstanding cash advance balance of $720.23 carried over from prior billing cycles, and $39.99 in interest charged on the cash advance portion of Ms. Pfahning's account.  Chapman Decl. ¶ 8; *id.* Ex. 1.

Chapman Decl. ¶ 16.  This payment methodology meant that Pfahning eliminated the purchase balance on her account, but left an unpaid cash advance balance of $430.55.  *Id.* ¶¶ 16-17.

Capital One did not receive any additional payments from Pfahning in May 2018.  As a result, when the May 2018 billing cycle ended, Pfahning was charged $31.01 in interest on her unpaid cash advance balance because that balance was not "paid in full."  This interest charge was added to the cash advance balance of her account.  *Id.*

This pattern continued through August 2018.  *Id.* ¶¶ 18-26.  Pfahning began each cycle with a cash advance balance carried over from the prior month.  *Id.* ¶¶ 17, 22, 26.  Although she made a payment equal to the "New Balance" shown on her previous month's billing statement, she also charged new purchases to her account before she submitted her payment.  *Id.* ¶¶ 20-21, 24-25, 28-29.  Thus, after Capital One followed the payment allocation method set forth in Regulation Z and the Customer Agreement, Pfahning's payments were not enough to pay in full both the higher-APR purchase balance—including the new purchases made during each billing cycle—and the lower-APR cash advance balance.  *Id.* ¶¶ 22, 26.  This meant that Pfahning continued to be charged interest on her unpaid cash advance balance, just as Capital One explained she would.  *See* Compl. Ex. B at 5 ("Interest Charges accrue on every unpaid amount until it is paid in full.").

Pfahning did not pay her cash advance balance in full until August 7, 2018.  Chapman Decl. ¶ 29.  Unlike prior months, rather than waiting until the deadline to pay the "New Balance" reflected on the prior month's billing statement, Pfahning made a payment of $150 on August 7. *Id.*  Under the payment allocation methodology in Regulation Z and the Customer Agreement, that amount was sufficient to eliminate all of Pfahning's outstanding balances, including her cash advance balance.  *Id.*  Pfahning therefore began the next billing cycle (September 2018) without

a cash advance balance for the first time in many months.  *See* Chapman Decl. Ex. 10.  She also

was not charged interest during the September billing cycle.  Chapman Decl. ¶ 31.

### C.    Pfahning's Lawsuit.

Pfahning filed this lawsuit based on the premise that she was charged interest on cash

advances even though her cash advance balance had been "previously paid back in full."  Compl.

¶ 24.  Pfahning apparently believes that she paid her cash advance balance in full in May 2018,

and was improperly charged cash-advance-related interest in May, June, and July 2018.  *Id.* ¶ 23.

Pfahning contends that if her allegations are true, then Capital One breached the Capital One

Customer Agreement, *id.* ¶¶ 36-43, and the implied covenant of good faith and fair dealing, *id.*

¶¶ 44-52.  Pfahning seeks to maintain her breach of contract and breach of implied covenant

claims on behalf of a nationwide class of Capital One customers.  *Id.* ¶ 25.

This suit was originally filed in Rhode Island, but Judge McConnell transferred the case

to this Court given the similarities between Pfahning's claims and the claims asserted in the

*Dress v. Capital One* lawsuit.  *See* Dkt. No. 8, 11.  Whereas *Dress* challenged Capital One's

alleged practice of charging interest on *purchases* that were paid in full by a certain date,[3] this

case challenges Capital One's alleged practice of challenging interest on *cash advances* that

Pfahning believes were paid in full.  *See* Dkt. No. 8.  Most of the same counsel that represented

the *Dress* plaintiffs represent Pfahning here.

### PROCEDURAL STANDARD

Rule 12(b)(1) permits a defendant to factually attack a plaintiff's standing to sue under

Article III of the U.S. Constitution by "go[ing] beyond the allegations of the complaint" to

---

[3]     This Court dismissed the *Dress* complaint with prejudice:  one plaintiff lacked Article III standing, and all of plaintiffs' claims failed because the interest charges were authorized by the Customer Agreement.  *See Dress v. Capital One Bank (USA), N.A.*, 2019 WL 3451304 (E.D. Va. July 30, 2019) (O'Grady, J.), *appeal docketed* 19-1926 (4th Cir.).

determine whether the facts support jurisdiction. *Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017). This means courts may "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists" without converting the motion into one for summary judgment. *Virginia v. United States*, 926 F. Supp. 537, 540 (E.D. Va. 1995), *aff'd*, 74 F.3d 517 (4th Cir. 1996). "When a Rule 12(b)(1) motion challenge is raised to the factual basis for subject matter jurisdiction, the burden of proving subject matter jurisdiction is on the plaintiff." *Briley v. United States*, 2016 WL 5402216, at *4 (E.D. Va. Sept. 26, 2016) (O'Grady, J.).

Standing in a class action is analyzed based on the injury allegedly suffered by the named plaintiff, because "[w]ithout a sufficient allegation of harm to the named plaintiff in particular, plaintiffs cannot meet their burden of establishing standing." *Doe v. Obama*, 631 F.3d 157, 160 (4th Cir. 2011).

## ARGUMENT

## I.   PFAHNING LACKS ARTICLE III STANDING TO SUE BECAUSE SHE DID NOT PAY HER CASH ADVANCE BALANCE IN FULL UNTIL AUGUST 2018.

Under Article III, Pfahning has standing to sue only if she suffered an injury that is "concrete and particularized," "actual or imminent, not conjectural or hypothetical," "fairly traceable to the challenged conduct of the defendant," and "likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547-48 (2016). Pfahning bears the burden of demonstrating standing "for each claim" and "for each form of relief" that she seeks. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). Pfahning cannot meet that burden here because she challenges an alleged practice—charging interest on cash advances after a cash

advance balance has been paid in full[4]—that has never applied to her.  The Complaint should therefore be dismissed for lack of subject matter jurisdiction.

Although Pfahning alleges that she was victimized from May to July 2018 by Capital One's alleged practice of "charg[ing] interest for cash advance amounts that [were] previously paid back in full," Compl. ¶ 24, Capital One's records conclusively disprove that allegation. Instead, an unpaid cash advance balance remained on Pfahning's account through August 7, 2018.  Chapman Decl. ¶ 29.  After Pfahning paid off the cash advance balance on August 7, 2018, she was not charged any interest in future billing cycles.[5]  *Id.* ¶¶ 7, 31.

An unpaid cash advance balance remained on Pfahning's account through August 7 because Capital One followed the payment allocation methodology set forth in Regulation Z and Pfahning's Customer Agreement.  When Pfahning made "a payment in excess of the required minimum periodic payment for a credit card account," Capital One was required to allocate that payment "first to the balance with the highest annual percentage rate." 12 C.F.R. § 1026.53(a); *accord* Compl. Ex. A at 7 ("We apply any part of your payment exceeding your minimum payment to the balance with the highest APR, and then to balances with lower APRs.").  In Pfahning's case, her purchase-balance APR was higher than her cash advance APR.  *See*

---

[4]     While Capital One vigorously denies that it employs such a practice (as Pfahning's experience illustrates), dismissal is required here because, even assuming such a practice exists, Pfahning cannot show that she was harmed by it.

[5]     The $0.50 minimum interest fee reflected on Pfahning's August 2018 statement, *see* Chapman Decl. Ex. 9, is attributable to the relatively small amount of interest that accrued on her cash advance balance from the day that billing cycle began (July 29) until the day the balance was paid in full (August 7).  *See* Compl. Ex. A at 6 ("Interest Charges begin to accrue from the day a transaction occurs."); Compl. Ex. B at 5 ("For Cash Advances . . . we will start charging Interest on the transaction date. . . . Interest Charges accrue on every unpaid amount until it is paid in full.").  Because the total interest that accrued during this nine-day period amounted to less than $0.50, the minimum interest fee applied.  *See* Chapman Decl. ¶ 30; Compl. Ex. A at 3 (agreement's disclosure of minimum interest charge); Compl. Ex. B at 5 (similar, in monthly billing statement).

Chapman Decl. ¶¶ 15, 20, 24, 28.  That meant that Capital One applied Pfahning's payments in excess of the minimum payment first to Pfahning's higher-APR purchase balances before her lower-APR cash advance balances.  *Id.* ¶¶ 16-17, 21-22, 25-26.  What was left of her payments was not enough to cover the entire outstanding cash advance balance.  *Id.*

Capital One also followed Regulation Z in determining the amount of Pfahning's purchase and cash advance balances when it applied Pfahning's payments.  Regulation Z authorizes Capital One to apply Section 1026.53(a)'s payment allocation rules "based on the annual percentage rates and balances . . . on the day the payment is credited to the account."  12 C.F.R. § 1026.53(a), Supp. I cmt. 2.  That is exactly what Capital One did here.  Chapman Decl. ¶ 13.  It makes sense that Capital One did so, because Regulation Z elsewhere generally instructs Capital One to "credit a payment to the consumer's account as of the date of receipt."  12 C.F.R. § 1026.10(a).

Pfahning does not contend that it was unlawful to charge interest on unpaid cash advances, nor could she.  After all, the Capital One Customer Agreement and the monthly billing statements[6] make clear that interest "begin[s] to accrue from the day a transaction occurs," Compl. Ex. A at 6, and continues to accrue "on every unpaid amount until it is paid in full," Compl. Ex. B at 5.  Even the Complaint acknowledges that Pfahning's agreement "authorizes Capital One to charge interest on outstanding balances," Compl. ¶ 40, which is all that Capital One did here.

The indisputable fact that Pfahning was never charged interest in billing cycles after her cash advance balance had been paid in full deprives her of standing to challenge Capital One's

---

[6]     Pfahning's Customer Agreement states that Capital One "will charge *Interest Charges* and *Fees* to your *Account* as disclosed on your *Statement* . . . ."  Compl. Ex. A at 6.

alleged practice of imposing such charges in these circumstances.  Standing does not exist unless

"there is a genuine nexus between a plaintiff's injury and a defendant's alleged illegal conduct."

*Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 161 (4th Cir. 2000).

In other words, "[a] particular injury is relevant to standing only if there is some causal nexus to

the acts challenged by the complaint," whereas "an injury caused by other events is irrelevant to

any purpose of the standing doctrine."  13A Charles Alan Wright & Arthur R. Miller, Federal

Practice & Procedure § 3531.4 (3d ed.).

It is not enough that Pfahning was charged any interest at all, because her standing to sue

turns on whether she was charged interest on a cash advance balance that had previously been

paid off.  "[A] plaintiff who has been subject to injurious conduct of one kind" lacks standing "in

litigating conduct of another kind, although similar, to which he has not been subject."  *Blum v.*

*Yaretsky*, 457 U.S. 991, 999 (1982); *see also Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 733

(1st Cir. 2016) ("Suffering one species of injury does not confer standing on a plaintiff to press

claims based on another species of injury, even if the injuries share a common genus."); *Foster v.*

*Essex Property Inc.*, 2017 WL 264390, at *3 (N.D. Cal. Jan. 20, 2017) (no standing after

defendant "produced evidence showing that no connection between [alleged injury] and the

charges can be made as a matter of fact").  For this reason, courts have repeatedly dismissed

claims on standing grounds where, as here, a plaintiff could not establish the requisite "causal

nexus" between the alleged harm and a challenged practice.  *Am. Canoe Ass'n, Inc. v. E.P.A.*, 30

F. Supp. 2d 908, 915 (E.D. Va. 1998); *see also SRS Techs., Inc. v. U.S. Dep't of Def.*, 112 F.3d

510, 1997 WL 225979, at *1 (4th Cir. 1997) (no standing where plaintiff could not "demonstrate

a causal connection between the injury and the conduct complained of"); *Kiser v. Kamdar*, 831

F.3d 784, 792 (6th Cir. 2016) (no standing where challenged conduct was "not the cause of

[plaintiff]'s alleged injury"); *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (no standing where challenged conduct did not injure plaintiff); *N.C. Fisheries Ass'n, Inc. v. Pritzker*, 2015 WL 4488509, at *7 (E.D.N.C. July 22, 2015) ("It is not enough to merely allege that the defendants caused both the injury and the challenged conduct—there must be a causal link *between* the two.").[7]

Pfahning's bare *allegation* that she was charged interest on amounts that had been paid back in full (*see* Compl. ¶ 23) is not enough to survive dismissal under Rule 12(b)(1) in the face of contrary *evidence*.  Because Capital One has challenged the factual basis of this Court's jurisdiction by a Rule 12(b)(1) motion to dismiss, "an independent evaluation of the merits of the jurisdictional claim is appropriate," and "no presumptive truthfulness attaches to the plaintiff's allegations."  *Crutchfield v. U.S. Army Corps. of Engineers*, 230 F. Supp. 2d 687, 695 (E.D. Va. 2002); *see also Virginia*, 926 F. Supp. at 540 (courts "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists"), *aff'd*, 74 F.3d 517 (4th Cir. 1996).  Dismissal on Article III standing grounds therefore is proper because any contention Pfahning might make that she paid her cash advance balance in full before August 7, 2018 would be "wholly unsubstantial and frivolous" in the face of Capital One's evidence.  *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009) (approving of dismissal under Rule 12(b)(1) in such circumstances); *see also N.C. Indian Cultural Ctr., Inc. v. North Carolina*, 2013 WL 4674884, at

---

[7]      *See also Doe v. Cuomo*, 755 F.3d 105, 114 (2d Cir. 2014) (no standing where provisions plaintiff challenged did not result in any injury to plaintiff); *Day v. Bond*, 500 F.3d 1127, 1134 (10th Cir. 2007) (no standing where plaintiffs failed to establish "injuries caused by the allegedly unlawful [conduct] the Plaintiffs decry"); *Maine Springs, LLC v. Nestlé Waters N. Am., Inc.*, 2015 WL 1241571, at *7 (D. Me. Mar. 18, 2015) (no standing where "there is nothing to connect the only concrete and particularized injury" to defendant's alleged misconduct).

*3 (E.D.N.C. Aug. 30, 2013) (dismissing under Rule 12(b)(1) when plaintiff "failed to satisfy its

burden to show that subject matter jurisdiction lies in this Court or that its claims made to invoke

subject matter jurisdiction are not wholly unsubstantial"); *Swiggett v. PCS Phosphate Co.*, 2012

WL 5349466, at *2, *4 (E.D.N.C. Oct. 29, 2012) (dismissing under Rule 12(b)(1) where

"plaintiff's allegations regarding his injury and causation are wholly unsupported by any

competent, credible evidence").

## II.    ALTERNATIVELY, PFAHNING'S CLAIMS FAIL ON THE UNDISPUTED FACTS, MAKING SUMMARY JUDGMENT PROPER.

Even if the Court were to conclude that Capital One's factual attack on Pfahning's

standing to sue should not be resolved on a 12(b)(1) motion, "the proper course of action" would

be to analyze the objection as "a direct attack on the merits of the plaintiff's case." *United States*

*v. North Carolina*, 180 F.3d 574, 580 (4th Cir. 1999); *see also Kerns*, 585 F.3d at 193 n.6 ("If a

district court does not dismiss under Rule 12(b)(1), it is entitled to treat a Rule 12(b)(1) motion

as a direct attack on the merits under Rule 56(c)."); *Harik v. Nat'l Aeronautics & Space Admin.*,

2006 WL 2381964, at *7, *14 (E.D. Va. Aug. 16, 2006) (granting summary judgment where

defendant moved to dismiss under 12(b)(1), or in the alternative for summary judgment under

Rule 56), *aff'd*, 219 F. App'x 325 (4th Cir. 2007); *Atkins v. Burwell*, 2016 WL 4399304, at *3

(D. Md. Aug. 17, 2016) (similar).  To the extent this Court treats Capital One's standing

argument as a challenge to the merits of Pfahning's claims, summary judgment should be entered

in Capital One's favor because "there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).[8]

---

[8]      Consistent with Local Civil Rule 56(B), Capital One has appended its listing of
undisputed facts as an attachment to this memorandum.  *See infra* at A2-A5.  To avoid summary
judgment, Pfahning must identify "evidence on which the jury could reasonably find" in her
favor.  *Trana Discovery, Inc. v. S. Research Inst.*, 915 F.3d 249, 253 (4th Cir. 2019).  She may
not rely on "conclusory allegations, mere speculation, the building of one inference upon

All of Pfahning's claims require her to prove that Capital One "charg[ed] interest to Plaintiff . . . on cash advance amounts that were previously paid in full." Compl. ¶ 39 (breach-of-contract claim); *see also id.* ¶ 49 (breach-of-implied-covenant claim alleging that "Capital One harms consumers by charging interest on cash advance amounts that were previously paid back in full"). But, as described above, Capital One's account records show that Pfahning had *not* paid off her entire cash advance balance when the disputed interest charges accrued. *See supra* at 3-6, 8-9. Rather, Capital One's records prove that Pfahning's cash advance balance was not paid in full until August 7, 2018. *See* Chapman Decl. ¶ 29. After that date, Pfahning was not charged interest in any subsequent billing cycles. *See id.* ¶¶ 7, 31. In the face of these clear and undisputed facts, Capital One is entitled to judgment as a matter of law because the charges were authorized by her Customer Agreement.[9] *See supra* at 8-9.

It makes no difference that the parties have not yet engaged in a "formal period of discovery." *Downing v. Lee*, 2017 WL 3082664, at *8 (E.D. Va. July 18, 2017) (O'Grady, J.), *aff'd*, 724 F. App'x 226 (4th Cir. 2018); *Fernandez v. Hayden*, 307 F. App'x 725, 726 (4th Cir. 2009) (district court has discretion to grant summary judgment prior to discovery); *Humphreys v. Roche Biomedical Labs., Inc.*, 990 F.2d 1078, 1081 (8th Cir. 1993) ("Rule 56 of the Federal Rules of Civil Procedure does not require trial courts to allow parties to conduct discovery before entering summary judgment."). Lack of discovery will not defeat a well-supported motion for

---

another, or the mere existence of a scintilla of evidence" to defeat summary judgment. *Sandlands C & D LLC v. Cty. of Horry*, 737 F.3d 45, 54 (4th Cir. 2013).

[9]     Under Virginia law (which Pfahning admits applies here, *see* Compl. ¶ 46), if the claim for breach of contract fails, then the claim for breach of the implied covenant necessarily fails as well. *E.g.*, *Dress*, 2019 WL 3451304, at *6 (dismissing implied covenant claim where interest charges were authorized by Capital One Customer Agreement); *Luther v. Wells Fargo Bank, N.A.*, 2014 WL 6451667, at *5 (W.D. Va. Nov. 17, 2014), *aff'd*, 623 F. App'x 608 (4th Cir. 2015) (noting that "there can be no breach of an implied covenant of good faith and fair dealing" without "a valid claim for breach of contract").

summary judgment unless additional information would "by itself create a genuine issue of material fact sufficient for the nonmovant to survive summary judgment." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).  That cannot be the case here, as Capital One's records eliminate any genuine dispute about when Pfahning's cash advance balance was paid in full.  To the extent this Court does not dismiss on Article III standing grounds, summary judgment would therefore be appropriate.

## CONCLUSION

Whether the Court resolves this motion under Rule 12(b)(1) or Rule 56, the outcome is the same:  Pfahning's claims fail because she was never charged interest on cash advance amounts that she previously paid back in full.  The Complaint should therefore either be dismissed, or summary judgment should be entered in Capital One's favor.


Dated: August 29, 2019                          Respectfully Submitted:


  /s/ Jessica Merry Samuels
Jessica Merry Samuels (VA Bar No. 89537)
Andrew Soukup (admitted *pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, D.C., 20001
Tel.: (202) 662-6000
Fax: (202) 778-5240
asoukup@cov.com
jsamuels@cov.com

*Attorneys for Defendant*
*Capital One Bank (USA), N.A.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

ROBIN PFAHNING, on behalf of herself
and all others similarly situated,

      Plaintiff,

      v.

CAPITAL ONE BANK (USA), N.A.,

      Defendant.

Civil Case No. 1:19-cv-00950-LO-TCB

**DEFENDANT CAPITAL ONE BANK'S
LISTING OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS
ALTERNATIVE MOTION FOR SUMMARY JUDGMENT**

Jessica Merry Samuels (VA Bar No. 89537)
Andrew Soukup (admitted *pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, D.C. 20001
Tel.: (202) 662-6000
Fax: (202) 778-5240
asoukup@cov.com
jsamuels@cov.com

*Attorneys for Defendant
Capital One Bank (USA), N.A.*

**A1**

Capital One has asked this Court to dismiss the Complaint with prejudice under Fed. R. Civ. P. 12(b)(1) on the ground that Plaintiff Robin Pfahning lacks Article III standing. If the Court does so, the Court has no need to refer to this Statement of Undisputed Material Facts.

In the alternative, Capital One has asked this Court to enter summary judgment in Capital One's favor. Pursuant to Local Civil Rule 56(B), Defendant Capital One Bank (USA), N.A. ("Capital One") submits the following listing of undisputed material facts in support of its alternative motion for summary judgment.

1. Robin Pfahning's Customer Agreement with Capital One provides:

   a. "In general, Interest Charges begin to accrue from the day a transaction occurs." Chapman Decl. Ex. 3 at 3.

   b. "If your Account has Segment balances with different APRs, here is how we apply payments in a Billing Cycle:

      (1) We generally apply credits and payments up to your minimum payment first to the balance with the lowest APR, and then to balances with higher APRs.

      (2) We apply any part of your payment exceeding your minimum payment to the balance with the highest APR, and then to balances with lower APRs."

      Chapman Decl. (Dkt. No. 23) Ex. 3 at 4.

2. On each of Robin Pfahning's monthly billing statements, Capital One states:

   a. "For Cash Advances and Special Transfers, we will start charging Interest on the transaction date." *E.g.*, Chapman Decl. Ex. 1.

   b. "Interest Charges accrue from the date of the transaction or the first day of the Billing Cycle. Interest Charges accrue on every unpaid amount until it is paid in full." *E.g.*, Chapman Decl. Ex. 1.

   c. "We generally apply payments up to your Minimum Payment first to the balance with the lowest APR (including 0% APR), and then to balances with higher APRs. We apply any part of your payment exceeding your Minimum Payment to the balance with the highest APR, and then to balances with lower APRs." *E.g.*, Chapman Decl. Ex. 1.

**A2**

3.      For the April, May, June, July, and August 2018 billing cycles, the APR (annual percentage rate) for the purchase balance of Pfahning's account was higher than the APR for the cash advance balance of Pfahning's account.  Chapman Decl. ¶¶ 15, 20, 24, 28.

4.      On May 25, 2018, Capital One received a payment from Pfahning in the amount of $2,215.43.  Chapman Decl. ¶ 9.

5.      Capital One applied Pfahning's May 25, 2018 payment as follows:  (i)  $62, reflecting the amount of Pfahning's minimum payment, was first applied to Pfahning's lower-APR cash advance balance, (ii) the first $450.54 of Pfahning's payment in excess of her minimum payment was applied to pay off her higher-APR purchase balance, which on May 25 consisted of a $51 purchase balance from the April 2018 billing cycle and the $399.54 in new purchases made between May 1 and May 19, 2018, and (iii) the remaining $1,702.89 was applied to Pfahning's lower-APR cash advance balance.  Chapman Decl. ¶¶ 16-17; *id.* Ex. 2, 4.

6.      Following the application of Pfahning's May 25, 2018, Pfahning ended the May 2018 billing cycle with an unpaid cash advance balance of $399.54, and Pfahning was charged $31.01 in interest on that unpaid cash advance balance.  Chapman Decl. ¶ 17.

7.      On June 25, 2018, Capital One received a payment from Pfahning in the amount of $430.55.  Chapman Decl. ¶ 21.

8.      Capital One applied Pfahning's June 25, 2018 payment as follows:  (i)  $35, reflecting the amount of Pfahning's minimum payment, was first applied to Pfahning's lower-APR cash advance balance, and (ii) the remaining $395.55 of Pfahning's payment was applied to her higher-APR purchase balance, which on June 24 consisted of the $1,899.26 (after accounting for merchant credits) in new purchases made between May 31 and June 24, 2018.  Chapman Decl. ¶¶ 21-22; *id.* Ex. 5, 6.

9.      Following the application of Pfahning's June 25, 2018, Pfahning ended the June 2018 billing cycle with an unpaid cash advance balance of $395.55, and Pfahning was charged $7.07 in interest on that unpaid cash advance balance.  Chapman Decl. ¶ 22.

10.     On July 25, 2018, Capital One received a payment from Pfahning in the amount of $1,702.68.  Chapman Decl. ¶ 25.

11.     Capital One applied Pfahning's July 25, 2018 payment as follows:  (i)  $26, reflecting the amount of Pfahning's minimum payment, was first applied to Pfahning's lower-APR cash advance balance, (ii) the first $1,360.09 of Pfahning's payment in excess of her minimum payment was applied to pay off her higher-APR purchase balance, which on July 24 included (after accounting for merchant credits) the $1,490.79 purchase balance from the June 2018 billing cycle and the $1,081.16 in new purchases made between June 28 and July 24, 2018, and (iii) the remaining $316.59 was applied to Pfahning's lower-APR cash advance balance.  Chapman Decl. ¶¶ 25-26; *id.* Ex. 8.

12.     Following the application of Pfahning's July 25, 2018, Pfahning ended the July 2018 billing cycle with an unpaid cash advance balance of $60.03, and Pfahning was charged $5.75 in interest on that unpaid cash advance balance.  Chapman Decl. ¶ 26.

13.     Pfahning did not pay her cash advance balance in full until August 7, 2018.  Chapman Decl. ¶¶ 7, 29.

14.     As of August 6, 2018, the total balance on Pfahning's account was $136.37.  Of that amount, $70.59 was a purchase balance, attributable to the three new purchases Pfahning had charged since the billing cycle began.  The remaining $65.78 was a cash advance balance carried over from the July billing cycle.  Chapman Decl. ¶ 28; *see also* Chapman Decl. Ex. 8, 9, 10.

15.     On August 7, 2018, Pfahning submitted a payment of $150.  Capital One applied that payment as follows:  (i) $25, reflecting the amount of Pfahning's minimum payment, was first applied to Pfahning's lower-APR cash advance balance; (ii) the first $70.59 of Pfahning's payment in excess of her minimum payment was applied to her higher-APR purchase balance, which on August 7 consisted of the $70.59 in new purchases made between July 29 and August 6, 2018, (iii) the next $40.78 was applied to Pfahning's lower-APR cash advance balance, which paid that balance off, and (iv) the remaining $13.63 was set aside and allocated to the purchase balance on August 10, when Pfahning made two new purchases on that date.  Chapman Decl. ¶ 29; *see also* Chapman Decl. Ex. 9, 10.

16.     Pfahning has not been charged any interest on her Capital One account since the August 2018 billing cycle, when she paid off her entire cash advance balance in full.  Chapman Decl. ¶¶ 7, 31.

17.     Pfahning has never been charged interest on her cash advance balance in months when she had previously paid that balance in full.  Chapman Decl. ¶ 32.


Dated: August 29, 2019                           Respectfully Submitted:


                                    /s/ Jessica Merry Samuels
                                   Jessica Merry Samuels (VA Bar No. 89537)
                                   Andrew Soukup (admitted *pro hac vice*)
                                   COVINGTON & BURLING LLP
                                   One CityCenter
                                   850 Tenth Street, NW
                                   Washington, D.C., 20001
                                   Tel.: (202) 662-6000
                                   Fax: (202) 778-5240
                                   asoukup@cov.com
                                   jsamuels@cov.com

                                   *Attorneys for Defendant*
                                   *Capital One Bank (USA), N.A.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 29, 2019, I will electronically file the foregoing with the

Clerk of Court using the CM/ECF system, which will then send a notification of such filing

(NEF) to the following:

Bernard Joseph DiMuro                Peter N. Wasylyk
DiMuroGinsberg PC                    Law Offices of Peter N. Wasylyk
1101 King Street                     1307 Chalkstone Avenue
Suite 610                            Providence, RI 02908
Alexandria, VA 22314-2956            pnwlaw@aol.com
bdimuro@dimuro.com

By:    /s/ Jessica Merry Samuels
Jessica Merry Samuels (VA Bar No. 89537)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, D.C., 20001
Tel.: (202) 662-6000
Fax: (202) 778-5240
Email: jsamuels@cov.com

*Attorney for Defendant*
*Capital One Bank (USA), N.A.*